May it please the Court, John Bischoff on behalf of the Plaintiff Appellant James Matthews. This case involves an incident that occurred back in November 29, 2013, where Mr. Matthews was working as a door guard for Bucky Horseshoe. It was a brief tenure, right? That was his first and last day, yes. And during the night, an off-duty police officer... We know the facts. Pardon? We know the facts. Okay. We're here because there are, like, three or four issues that the Court has to determine. One, whether or not the dual-capacity doctrine applies to Bucky Horseshoe regarding the gram shop versus what their duties are as an employer. The other issue is whether or not Officer Welch was working as a police officer, even though he was somewhat incapacitated, and whether that... What does being incapacitated have to do with whether he was acting within the scope of his employment? It doesn't have anything to do with it. As long as he was acting like what he thought was maintaining the peace. Well, if he originally tries to break up the altercation, does that mean he's acting within the scope of his employment just because he happens to be a police officer? I believe so, Your Honor. How is that? I mean, I don't understand how that flows. That would mean that a police officer is never off-duty. Correct. That's not what the law says. There's plenty of cases where officers have been found not to be on duty. I mean, in this case, did the officer, Welch, as I recall, Matthews didn't even know he was an officer until afterwards, right? Correct. Okay. So there was nothing that the Walsh indicated of his being a police officer. Didn't announce that he was a police officer. Didn't have any badge on. It was in plain clothes. Apparently didn't have a gun. Didn't have any other offerments of a police officer. Never said he was a police officer. How does that translate into him being on duty? By him exercising what a police officer should do by breaking up an altercation, keeping a peace between two of his friends that are at the bar, I think that warrants him being within the scope of his employment. So any time a person who's a police officer tries to break up a fight between his children, then he must be involved in official duty? Because these are friends. These are friends. These are two friends. He's breaking up a fight. He's breaking up a fight between his kids. What's the difference? Well, what's puzzling and what's interesting is the fact that yesterday or the day before, there was an incident where an off-duty police officer had collided into an establishment killing a young woman. He was criminally charged. In this case, Officer Walsh was not charged with any criminal activity. But you took money from him, okay? You settled with him. Correct. So why is the city on the hook? All right. You already took the money from the employee. I know. That's a bit of a problem. That's an obstacle. Yeah, it's a bit of a hurdle you have. Okay. The Gilbert case that said that once you get rid of the case with the agent, the principal goes free because otherwise there would be no reason for the agent to settle because then the principal would be going after the agent for whatever they paid. In this case, we have the Tort Immunities Act that says that it's the principal that has to come up with the cash if it's determined that the agent was working in the scope of his or her employment. So the problem or the worry about the agent's not going to sell because they're going to end up having to pay whatever. But that's not section 2-111 says that nothing contained herein shall operate to deprive any public entity of any defense heretofore existing and not described herein. It also says that any defense or immunity, common law or statutory, available to any private person shall likewise be available to local public entities. I don't know how that's a defense. Well, what it says is that the fact that it's a public entity, the payment is no different if it's a public entity than if it's a private entity with regard to the agency. I still, you know, that would make the statute go away. It would have no meaning at all if that wasn't what, that isn't a reason for still keeping the principal on the hook. Well, you're saying only the principal should be on the hook when they're a public entity. I thought that's what you said. I'm saying that because of this particular portion of the statute, it's whatever the agent pays and whatever the municipality or the public entity pays, I mean, they'll get credit for whatever the agent paid. But on both sides of the defendant's coin here, you took money from the police officer, Mr. Walsh, okay? But now you want to double dip against the city. And then you took money, their client took money in a worker's comp case from the lucky horseshoe, but you want to double dip there to try to say it's on the dram shop. It seems, you know, a little legally counterintuitive. It strikes me. The other issue is the dual capacity doctrine. Okay. And the dual capacity doctrine is not in how much different the second function of the employer is from the first, but whether the second function generates obligations unrelated to those flowing from the first, that of the employer. So there are obligations under the Dram Shop Act that's supposed to not over-serve patrons of their establishment. That has nothing to do with being an employer. So I think that the dual capacity, regardless of what happened in the worker's comp case, $2,000 is not a lot of money. So I think that the dual capacity doctrine applies in this situation. What's the money have to do with it? The amount of the money. You mentioned it in your brief. You just mentioned it now. It was. Why does that matter? What did you get from Walsh? That wasn't discernible from the record. $300,000. My client can no longer work after that incident. So that would mean, if you're right about the dual capacity, any Dram Shop owner is responsible when its employees are injured by an over-served patron or by a pipe breaking out in the bar. They're on the hook, not only for worker's comp, but also for Dram Shop liability. I mean, that would be automatic, wouldn't it? No. Counsel in his brief brought up a 1959 case where the cocktail waitress could not bring a Dram Shop action against her employer because she filed worker's comp. It was a 1959 case. But the difference there was, she's the one that was serving the alcohol. Mr. Matthews was not serving alcohol. He was at the door checking IDs and making sure that no one was carrying any drinks out. He had no control over what he was doing. So every bouncer in a bar has that dual capacity argument really as a matter of law. I would think so. Is there any case that says that? I haven't found any. Don't you need under dual capacity a separate legal entity? I'm sorry? Don't you need under dual capacity analysis a separate legal entity? I don't believe so. Even though case law has stated so over the years? Well, I stated what the... It's a one-part test or a two-part test? It's a two-part test, but... What's the first part and what's the second part? The second part is whether that makes the entity a different persona. Well, distinct legal entity? Yes, that's just what I said. Right. I don't think that being an employer is... I mean, bars, the different capacity that the bar holds when they are subject to the Trans-Job Act. Well, the issue is whether you have a distinct legal persona as well. It's a two-part test, right, which you just acknowledged. Well, I think that most of the cases are citing larceny, and then it goes a little off. I think that what I stated is what the purpose of the dual-capacity doctrine involves. Anything else? We're good. Thank you. Good morning, Your Honors. Again, I'm Suzanne Lose. I represent the city of Chicago, and counsel for my co-advocate and I have agreed to just split the time equally here this morning. This morning, I will explain that the plaintiff's settlement with Mr. Walsh extinguished his purely derivative claim against the city, and so summary judgment is proper. In time permitting, I will also briefly address our alternative argument that Walsh was not acting in the scope of employment. The plaintiff's claims against the city are purely derivative, and in cases involving vicarious liability like this, a plaintiff's settlement with the agent extinguishes not only the claim against that agent, but also against the principal. Counsel just told us that it doesn't apply to the city. Counsel, my understanding of counsel's argument is that Section 9-102 somehow abrogates that common law principle with respect to the city of Chicago, and we submit that it simply does not. Nothing in Section 2-102, I'm sorry, Section 9-102 of the Total Immunity Act, addresses the effect of the settlement with the plaintiff and an employee on the principle. It addresses the obligations of the city when there is a judgment and when there is a settlement with the city, because Section 9-102 authorizes the city to settle those claims and not the employee. And also, significantly, nothing in the Total Immunity Act expands liability or takes away defenses that are otherwise available to the city. We cite several sections in our brief, and a couple were mentioned here earlier this morning. Section 101.1A says the Total Immunity Act grants only immunities and defenses. Section 101.1B specifically says that any defense or immunity, common law or statutory, available to any private person is likewise available to local public entities. Counsel said that doesn't have any effect. I think that was his argument. It makes clear that Section 9-102 does not take away a common law defense, and that's what the rule about agent settlements extinguishing claims against the principle is. So I don't know how that can possibly be, how Section 9-102 could possibly read to take away that defense for the city of Chicago. And there's also Section 2-111 that says nothing contained herein. Deprives public entities of any defenses heretofore existing and not described herein. And, of course, the rule in American National Bank and Gilbert was preexisting, actually existed a long time before those cases. Those cases just resolved whether the Contribution Act changed that principle. And your position would be the same, that the settlement with the agent extinguishes the principle's liability, even if during the altercation Officer Walsh said, I'm a Chicago police officer, you know, step back. Yes. Yes. Absolutely. The principle would apply just the same on its own terms. So we submit that the Tort Immunity Act provides no basis to deviate from the settled precedent holding that a plaintiff's settlement with the agent extinguishes derivative claims against the principle. And also with respect to the scope of employment argument, because the plaintiff's settlement extinguished the claims against the city, this court need not address that alternative ground, but we do submit it is an alternative ground, an alternative reason for summary judgment. We submit, well, Mr. Walsh's conduct is not within the scope of employment. A plaintiff has to show, in order to show scope of employment, that the employee was performing the kind of acts that he was hired to perform, occurring then within the authorized time and space of work, and was motivated to serve the employer versus his own interests. The city has faced some exposure from some pretty noteworthy cases where police officers were off-duty and drinking, and in one case shot another police officer inside a home. The city faced exposure for that. Another case where two guys are parked off to the side of the road and a drunk police officer hit him, and a car catches on fire, and the police officer runs away, even though he's off-duty, and the city has some exposure there. Why doesn't the plaintiff have the same benefit here? Well, we don't submit that every single time a police officer is off-duty he's, you know, never acting within the scope of employment. A police officer can use his authority as a police officer when he's off-duty. But, nevertheless, the plaintiff still needs to show that, you know, that the police officer is somehow using his, you know, weight of authority, or somehow acting, performing the kind of acts that a police officer is hired to perform. It's not the case that every time a police officer tries to break up an argument with, say, his children was an example that was mentioned before, that he's acting within the scope of employment, because that can be called keeping the peace. There needs to be something more. Here what we have is a bar fight where, under a plaintiff's own version of events, a bar fight where Mr. Walsh is punching someone in the face on top of the bar, and he somehow pushes or somehow causes the plaintiff to go flying into tables and to the ground, and he's hurling racial slurs at the plaintiff. Not wearing a uniform, not using any kind of police equipment, does not announce his office or show his badge or other way purport to be using the weight of his authority as a police officer. So we submit that there is no question under plaintiff's version of the facts here that Mr. Walsh was not acting within the scope of employment. So in sum, we submit that Mr. Walsh's conduct was clearly not within the scope of employment and offer that as an alternative grounds for affirmation in addition to the settlement between the plaintiff and Mr. Matthews here. We ask that the judgment be affirmed. Thank you. May it please the court, counsel, good morning. I'm Greg Gass and I represent Defendant Lucky Horseshoe Lounge. In this matter, a settlement release with plain and ambiguous terms was signed. I feel that the facts in this matter and the record show that a fairly logical set of circumstances and analysis is herein with no doubt. With all due respect intended, the plaintiff has taken some very counterintuitive responses to this. So we have a release that's unambiguous, full and final release for any injuries arising out of the incident at issue. And the trial court looked at the release, looked at the facts, looked at the depositions and determined the release was full and final and therefore granted summary judgment. Plaintiff's counsel, excuse me, Mr. Matthews has indicated that the amount of money should matter in the briefing and the argument put forth. I can't find any case law that says that matters. It was, they negotiated a sum, he took it and executed the release that he did that's in the record. So I'm not sure how the money mattered. The amount of money matters. It's the terms of the four corners of the release. The court asserted the dual capacity doctrine as a way around this and that is also puzzling first in the first step of analysis and just a logical progression. Even if we were to assume for a moment for the sake of argument that the dual capacity doctrine could exist, that doesn't change the fact that the plaintiff executed a complete release. It's, they're trying to put the cart before the horse here. The dual capacity doctrine existed and applied. How does that impact the release? And there's been no response to that. And I would respectfully submit that the dual capacity doctrine is just not applicable in this matter. As Your Honor, the Honorable Hyman noted, it's a two-part analysis in this case for the dual capacity doctrine to apply. First the employer has to be acting in two capacities such that the second capacity confirms the first. It occurs upon it obligations unrelated to those flowing from the first, that is of an employer. And secondly, that the employer was acting, and this is the important part, acting as a distinct separate legal persona. We just don't have that in this case. We have a drinking establishment. They were operating as a drinking establishment. Mr. Matthews was hired as an employee of a drinking establishment. And not only was he hired as an employee of a drinking establishment, he was hired to do certain duties that are within that persona itself. One, he's screening people coming in and checking IDs, because you can't have people that are underage and they're drinking or being present. Two, another key that's within this persona of Lucky Horseshoe is the drinking establishment. He's making sure that liquor doesn't get outside the building outside. So he is playing a role right inside that persona of a drinking establishment. So how a separate legal entity has been created, how its obligations unrelated, there's nothing in the record and it's not supported by a case law precedent. There's a case that I cited in the briefing, Garland v. Morgan Stanley, where they tried to argue, and they were unsuccessful, the plaintiff was unsuccessful in arguing, that the company had a supervisor in a role that was outside the legal persona by flying an airplane to a business obligation or retreat or conference, something like that. They tried to argue that because the supervisor was flying the plane, that they were holding themselves out as basically a travel agency or a travel provider. And the first appellate district court said, no, that's not the case. They're still on their way to a business meeting. So there's a lot, I don't know what the word is, more of an escalation there than there is here in this case where you have a doorman that is part of the operation about patrons that are coming in, keeping them out, and also making sure the liquor doesn't get out. So plaintiff's executed a release, even if the dual doctrine applies, he's still executed a release. And I would submit that the dual capacity doctrine does not apply. If there's no questions from the bench, I'll sit down. Thank you. Counsel? I'm just curious about the release of all accidental injuries and that the release also said that there's a lien out for the amount that they paid. So how does the release of all claims relating to an accidental injury somehow carve out the separate duty, you say, lucky horseshoe, oh, your client? I mean, the employer has an obligation to provide a safe place to work, and what you're basically saying is, the employer didn't provide me a safe place to work, and your worker's got a claim. But that doesn't stop going forward on the Gramshop case. But you're essentially saying, by over-serving Walsh, you made my place of employment unsafe. But they treated it as an accidental injury. And I think that even though the court doesn't want to look at the amount that was paid, it was a very, very minimum amount that, one, he wasn't an employee, he was an independent contractor. Two, he shouldn't have been there, and that they just made it go away. If he wasn't an employee, why is he submitting a worker's complaint? Thanks for your briefs and argument. We will take the matter under advisement and issue an order of opinion in due course.